Hitchcock, J.
Tho object of the parties to this suit, in bringing the same before this court, seems to be to elicit a construction of some two or three statutes of the state which are supposed to bear upon tho case. We need go no further back than to the act of March 5, 1842, under which this bill was filed. This act provides, in the first section, “that any person having a claim of any description against any turnpike road company, in which the State of Ohio is a stockholder, may proceed to collect such claim by a proceeding in chancery against said company, in any court of competent jurisdiction; and on hearing and determination of such suit, if the complainant shall sustain his claim, the court shall render a decree accordingly, and appoint a receiver, whose duty it shall be to receive the tolls collected on said road; and, after paying the necessary repairs and expenses of said road, shall, on tho order of the auditor of state, pay into the state treasury tho amount due to the state in proportion to the amount paid on its number of shares, in the stock of said company; and the balance, after paying the costs of said suit, he shall apply to the satisfaction of the decree in favor of said complainant or complainants; and it shall be the duty of such receiver to make such payments as often at least as once in every six months; and ho shall, also, at the close of each six months, report his collections, the amount paid for repairs, and the amount due to the State of Ohio, to the auditor of state.” 40 Ohio Laws, 39.
Section 3 of the act authorizes the directors of such turnpike road companies, after having paid the state the portion *of tho profits to it due, to apply tho remainder of the profits, first, to the payment of the debts of the company; second, for the extension or completion of the road; “and the amount of profits so appropriated, as well as the balance applied by any receiver under the first section of this act, in payment of any decree, shall be considered as so much paid, in additional shares, for tho stockholders in said company; and the state, and the stockholders, shall receive dividends in proportion to tho amount paid on their respective shares.”
*27 There is no difficulty in understanding these two sections of the act. The tolls of the company, excepting such as are due to the state, are to be appropriated to the payment of its debts. In case suits are commenced, then these tolls are to be so appropriated, through the instrumentality of a receiver; otherwise, the directors of the company may appropriate them. Nor is the payment confined to any particular class of debts. After the debts are paid, then the tolls may be applied to the completion or extension of the road.
On March 11, 1844, another act was passed, entitled “ an act to provide for the payment of contractors on the Zanesville and Maysville Turnpike Road,” which act is as follows:
Sec. 1. Be it enacted by the General Assembly of the State of Ohio, That the president and directors of the Zanesville and Mays-ville Turnpike Road Company be, and they are hereby authorized to appropriate all the tolls hereafter received on said road, alter deducting all necessary expenses of repairs, and other incidental expenses connected with the collecting and disbursing the tolls, repairs, and managing the road, as far as may be necessary, to the payment of contractors on said road, who performed labor on the said road prior to March 1, 1842, and who are yet unpaid therefor.
Sec. 2. All acts and parts of acts contrary to the provisions of this act, be and the same are hereby repealed. 42 Local Laws, 160.
*By this act, all the tolls thereafter to be collected on the road, arc to be applied to pay debts contracted for labor on the same performed previous to March 1, 1842; whereas, by the act of 1842, only such tolls as belonged to stockholders other than the state, could be appropriated for the payment of debts. In this, then, this act differs from the former, and so far operates to repeal it. It operates as a relinquishment on the part of the state, of its claim for tolls, until debts for labor performed on the road , prior to March 1, 1842, are paid. This was unquestionably the bearing, and probably the only design, of the act. We do not suppose that it was the intention to divest any creditor of rights already acquired under the act of 1842, whether such creditor was such in consequence of the performance of labor, or not. All that was intended was, that the state would relinquish its right to tolls until a certain class of debts were paid.
*28 But can these tolls be appropriated, through the instrumentality of receivers, according to the first section of the act of 1842 ? This act names the president and directors of the company as the agents who are to receive and pay out these tolls. It says nothing about receivers. So, in one aspect of affairs, the act of 1842 authorizes the directors to appropriate the tolls for a similar purpose; but this did not-interfere with the disposition of tolls by receivers.
If we are right in the construction of the act of 1844, it does not interfere with the rights of creditors to prosecute under the act of 1842. Suits may still be prosecuted, and, if prosecuted, receivers must be appointed; and these receivers will, as under the law of 1842 they are required to do, receive all the tolls. But, instead of paying a portion of those tolls to the treasurer of state, on the order of the auditor, they will be distributed pro rata to the creditors. And creditors who had prosecuted suits, previous to the passage of the act of 1844, as well as others, are entitled to the benefit of that act, the object and intent of which was to increase the fund from *which debts were to be paid, so far at least as creditors for labor were concerned.
A decree may be taken accordingly.